UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEPHEN BARTLETT, | ) |
|  Petitioner, | ) 3:11-cv-00349-ECR-VPC |
| vs. | ) |
| NEVIN, *et al.*, | ) **ORDER** |
|  Respondents. | ) |

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a state prisoner, is proceeding *pro se*. Before the court is respondents' answer to the petition (ECF #22), and petitioner's reply (ECF #31).

The court turns first to petitioner's motion for finding of contempt (ECF #23) and motion to rule in petitioner's favor (ECF #24). Respondents opposed both (ECF #s 25 and 30, respectively). Both motions are based on petitioner's contention that respondents' answer to the petition was untimely. However, petitioner's declaration of abandonment was filed and served on September 20, 2011 (ECF #21). Pursuant to this court's Order dated September 14, 2011, respondents had thirty (30) days from that date (September 20) to file their answer (ECF #20). Respondents filed their answer on October 20, 2011 (ECF #22). Thus, respondents filed their answer within thirty (30) days, and the answer was

timely. Accordingly, petitioner's motion for finding of contempt (ECF #23) and motion to rule in petitioner's favor (ECF # 24) are both denied.

**I. Procedural History and Background**

On December 13, 2006, the State of Nevada filed an indictment in the Second Judicial District Court for the State of Nevada charging petitioner, Stephen Bartlett, with two counts of embezzlement and three counts of grand larceny (exhibits to motion to dismiss, ECF #8, ex. 5).[1] On January 10, 2007, petitioner pled guilty to one count of embezzlement (ex.s 8 and 9). The court scheduled sentencing for March 30, 2007 (ex. 9 at 9). Petitioner failed to appear at the time scheduled for sentencing, and the court issued a bench warrant for his arrest (ex. 11).

Petitioner was subsequently incarcerated in California on other charges (*see* ex. 54).

On December 31, 2008, petitioner was convicted of one count of embezzlement and sentenced to 48-120 months in prison, $575.25 restitution for extradition costs, and $121,000 in restitution (ex.s 18 and 19).

Petitioner did not file a direct appeal to the Nevada Supreme Court.

On February 18, 2009, Bartlett filed a proper person petition for writ of habeas corpus directly with the Nevada Supreme Court (ex. 21). On March 12, 2009, the Nevada Supreme Court denied the petition for lack of jurisdiction (ex. 23).

Petitioner dispatched his first federal habeas petition to this court on April 10, 2009 (*see* 3:09-cv-0207-ECR-RAM, docket #6). This court dismissed the action without prejudice for lack of exhaustion (*id.*).

Petitioner filed a proper person petition for writ of habeas corpus in state district court on October 20, 2009 (ex. 25). The court dismissed the petition on August 6, 2010 (ex. 54). On April 6, 2011, the Nevada Supreme Court affirmed the dismissal (ex. 67).

Petitioner dispatched this federal petition for writ of habeas corpus on May 11, 2011 (ECF #4). This court denied petitioner's motion for appointment of counsel on June 6, 2011 (ECF #3).

---

[1]All exhibits referenced in this Order are exhibits to respondents' motion to dismiss, ECF #8.

Petitioner raised two grounds for relief before this court, and ground one and most of ground two were dismissed by this court's Order on September 14, 2011 (ECF #20), which granted respondents' motion to dismiss in part. Respondents now answer ground 2(B)(1).

**II. Discussion**

    **A.    Legal Standard**

    **1. State Court Decision Must Be Contrary to Clearly Established U.S. Supreme Court Precedent**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

These standards of review "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999). Therefore, this court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different

from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**2. Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any

review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland,* 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness,. . . under prevailing professional norms." *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court recently described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance. . . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 131 S.Ct. at 1398-1401.

**B. Ground 2B(I)**

In ground 2(B)(I) petitioner alleges the following: his counsel rendered ineffective assistance when he failed to move for dismissal with prejudice based on violation of the right to a speedy trial due to the State's violation of petitioner's rights under the Interstate Agreement on Detainers ("IAD"). Counsel failed to research the issue and move for dismissal despite documentation provided to him by petitioner (ECF #4 at 21).

5

Respondents now argue that the IAD does not apply to sentencing and that, even assuming that the Sixth Amendment right to a speedy trial encompasses sentencing, petitioner was not prejudiced by any delay in sentencing here.

**1. Interstate Agreement on Detainers and Sentencing**

The state district court denied the state habeas petition (ex. 54). The district court determined that the Nevada case of *Prince v. State*, 55 P.3d 947 (Nev. 2002), in which the Nevada Supreme Court held that the IAD does not apply to sentencings, controlled the outcome of petitioner's state habeas petition. The Nevada Supreme Court agreed and affirmed the denial of the state habeas petition on that basis (ex. 67 at 2).

Nevada is a member of the IAD, which prescribes procedures by which an inmate may request the speedy disposition of charges against him that are pending in another jurisdiction. Nev. Rev. Stat. 178.620; *Prince*, 55 P.3d at 949. Article III(a) of the IAD provides:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within one hundred eighty days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of imprisonment and the prisoner's request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

In *Prince*, the appellant pled guilty to the charges contained in the information but failed to appear at sentencing. 55 P.3d at 948. Later that year, appellant signed a waiver of extradition; he sought to return to Nevada for his Nevada sentencing while serving a six-year prison term in Arizona on unrelated charges. Nevada did not extradite appellant but asked to be notified sixty days prior to his release. The state district court denied appellant's motion to dismiss, but found that the State violated

6

the IAD and that the letter to Arizona requesting to be advised prior to appellant's release constituted a detainer within the meaning of the IAD. The court thereafter sentenced appellant in absentia, and the appellant appealed his judgment of conviction. *Id*. at 948-49.

In *Prince*, the Nevada Supreme Court discussed *Tinghitella v. State of California*, in which the Ninth Circuit Court of Appeals held that the IAD "applied to sentencing proceedings, concluding that the word 'trial' in the Agreement should be broadly construed." *Id*. at 949 (citing *Tinghitella*, 718 F.2d 308, 311 (9th Cir. 1983)). The Nevada Supreme Court determined that *Tinghitella* represented the minority view and, together with one federal district court case from Florida, was the only authority for the proposition that the IAD applied to defendants who had been adjudged guilty but had not yet been sentenced. The Court also observed that most jurisdictions have held that the IAD does not apply to demands for sentencing.

The Nevada Supreme Court further looked to *Carchman v. Nash*, in which the United States Supreme Court held that the IAD does not apply to probation revocation proceedings. 473 U.S. 716 (1985). *Carchman* has been widely relied on by other jurisdictions in finding that the IAD does not apply to demands for sentencing.[2] The Supreme Court in *Carchman* relied on the plain language of the statute; Art. III of the IAD states that it applies to detainers based on "any untried indictment, information or complaint." The Supreme Court continued:

> The most natural intepretation of the words "indictment," "information," and "complaint" is that they refer to documents charging an individual with having committed a criminal offense. This interpretation is reinforced by the adjective "untried," which would seem to refer to matters that can be brought t full trial,

---

[2] *See State v. Burkett*, 179 Ariz. 109, 876 P.2d 1144, 1146 (App.1993); ("Nearly all jurisdictions that have considered whether the [Agreement] applies to sentencing detainers have concluded that it does not."); *see also People v. Castoe*, 86 Cal.App.3d 484, 150 Cal.Rptr. 237 (1978); *Moody v. Corsentino*, 843 P.2d 1355 (Colo.1993); *State v. Sparks*, 104 N.M. 62, 716 P.2d 253 (App.1986); *People v. Randolph*, 85 Misc.2d 1022, 381 N.Y.S.2d 192 (Sup.Ct.1976); *State v. Barnes*, 14 Ohio App.3d 351, 471 N.E.2d 514 (1984); *see generally U.S. v. Coffman*, 905 F.2d 330 (10th Cir.1990); *People v. Barnes*, 93 Mich.App. 509, 287 N.W.2d 282 (1979); *State v. Lewis*, 422 N.W.2d 768 (Minn.Ct.App.1988).

7

and by Art. III's requirement that a prisoner who requests final disposition of the indictment, information or complaint "shall be *brought to trial* within 180 days."

Moreover, the Supreme Court determined that the legislative history provided no reason to depart from the plain language of the IAD, as its "purpose is to prevent frivolous detainers and prejudice to the defendant's ability to present a defense at trial caused by delay."

Thus, in *Prince*, the Nevada Supreme Court, based on the analysis in *Carchman*, held that the IAD does not apply to sentencing. Rather, where "a defendant has been convicted or has pleaded guilty, there can be no concern that the detainer is without grounds since the adjudication of guilt is proof of the detainer's legitimacy." The Nevada Supreme Court further observed that despite the Ninth Circuit's holding in *Tinghitella* that the Sixth Amendment applied to sentencing, the United States Supreme Court has never held that sentencing was a part of trial. The Nevada Supreme Court adopted the reasoning in *Carchman* and determined that the plain language of the IAD does not apply to sentencing and that the purpose of the IAD is not furthered by extending the IAD's reach to sentencing.

The United States Supreme Court has not addressed whether the IAD applies to demands for sentencing. Thus, petitioner's argument before this court depends upon the resolution of an open question in U.S. Supreme Court jurisprudence. As such, the Nevada Supreme Court's decision in *Prince*, on which it relied in affirming the denial of petitioner's state habeas petition, cannot be a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Accordingly, this court is precluded from granting habeas relief. *Id., Carey v. Musladin*, 549 U.S. 70, 77 (2006).

The court notes that petitioner argues that the bench warrant that issued after he failed to appear included four original charges to which petitioner had not pled guilty (he pled guilty to a fifth charge) as well as the additional charge of failure to appear (ECF #31). However, the only charge discussed at sentencing and the only charge he was sentenced for was the count to which he had already pled guilty–count I of the information: embezzlement (ex. 19). Therefore, petitioner's argument is meritless.

8

**2. Prejudice**

As discussed above, the Nevada Supreme Court has held that the IAD does not apply to demands for sentencing. While the Ninth Circuit has held that the IAD indeed applies to demands for sentencing, the United States Supreme Court has not decided this issue. Thus, federal habeas relief is precluded. Respondents also further argue that counsel did not render ineffective assistance by failing to file a motion to dismiss the charges because neither petitioner's Sixth Amendment right to a speedy trial nor Fourteenth Amendment right to due process were violated and, moreover, because petitioner suffered no prejudice as a result of any delay in sentencing. The court notes that ground 1 of the petition alleged a violation of petitioner's Sixth and Fourteenth Amendment rights to a speedy trial and due process (ECF # 4). However, pursuant to respondents' motion to dismiss, ground 1 was dismissed as procedurally barred (ECF #20).

Nevertheless, even if this court were to consider the four factors used to evaluate a Sixth Amendment speedy trial claim, they do not weigh in petitioner's favor. These factors are also generally used in analyzing a Fourteenth Amendment due process claim. *Barker v. Wingo*, 407 U.S. 514 (1972); *Prince*, 55 P.3d at 951. The factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the speedy trial right; and (4) prejudice to the defendant. *See, e.g., U.S. v. Williams*, 782 F.2d 1462, 1465 (1985); *Prince*, 55 P.3d at 951. With respect to petitioner, it appears that the state district court received the documents reflecting his demand for sentencing on April 10, 2008 (*see* ECF #4 at 17-19; ECF #22 at 12 n.6). The 180-day IAD deadline would have expired on October 8, 2008. Petitioner was sentenced on December 31, 2008 (ex. 19). The court agrees with respondents that the delay in sentencing of about three months was not great. Next, the reason for the delay is attributable to petitioner: he failed to appear at sentencing and subsequently committed crimes in California for which he was convicted and incarcerated there. Petitioner did, in fact, assert a speedy trial right.

Finally, the court considers three interests in order to determine prejudice: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting

the possibility that the defense will be impaired. *U.S. v. Williams*, 782 F.2d at 1466; *Prince*, 55 P.3d at 951. Petitioner clearly cannot show prejudice. He cannot show oppressive pre-trial incarceration because he was incarcerated in California on a conviction in that state. He cannot demonstrate excessive anxiety and concern or that his defense was impaired because he had already pled guilty to the charge. Accordingly, petitioner cannot demonstrate prejudice, the fourth factor used to evaluate a Sixth Amendment speedy trial claim. Taken together, the four factors would weigh against any finding of a Sixth or Fourteenth Amendment violation.

Thus, while the court cannot now consider any Sixth Amendment speedy trial or Fourteenth Amendment due process claim independent of the claim of ineffective assistance of counsel, petitioner nevertheless would be unable to demonstrate that any delay in sentencing violated his Sixth or Fourteenth Amendment rights or that he suffered prejudice by any delay.

**III. Petitioner Has Failed to Demonstrate Ineffective Assistance of Counsel**

In conclusion, petitioner has not demonstrated that his counsel rendered ineffective assistance. The U.S. Supreme Court has not ruled on the issue of whether the IAD applies to demands for sentencing. Accordingly, this court may not consider that question in this habeas petition. Moreover, petitioner cannot demonstrate that he has suffered prejudice due to any delay in sentencing. Thus, he has not and cannot show that his attorney made serious errors that prejudiced the defense by failing to research the issue and move for dismissal with prejudice based on the State's violation of the IAD. *Williams v. Taylor,* 529 U.S. 362, 390-91 (2000) (citing *Strickland,* 466 U.S. at 687). He has not and cannot show that his counsel's representation fell below an objective standard of reasonableness or that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Accordingly, this petition for writ of habeas corpus is denied.

**IV. Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a

petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

**V. Conclusion**

**IT IS THEREFORE ORDERED** that petitioner's motion for finding of contempt (ECF #23) and motion to rule in petitioner's favor (ECF #24) are both **DENIED**.

**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus (ECF # 4) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT** accordingly and close this case.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

Dated this 17th day of January 2012.

Edward C. Reed.
UNITED STATES DISTRICT JUDGE